UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No. CV 19-8185-GW-PJWx | Date April 10, 2020 |
| Title *Edward Heldman, III, et al. v. Larry Zerner* | Page 1 of 1 |

Present: The Honorable  **GEORGE H. WU, UNITED STATES DISTRICT JUDGE**

| Javier Gonzalez | None Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS – RULING ON MOTION TO DISMISS [14]**

    The Court finds that it can decide the present motion without the need for oral argument of counsel. Therefore, pursuant to C.D. Cal. L.R. 7-15, the hearing on said motion has been taken off-calendar.

    The Court would GRANT Defendant's Motion to Dismiss Plaintiff's claims for breach of contract and the covenant of good faith and fair dealing, breach of fiduciary duty, and negligence – malpractice. The Court would DENY the Motion as to Plaintiffs' claim for fraud and the concomitant possibility of punitive damages. Plaintiffs are to prepare a proposed order.

    The Court orders the parties to file a Fed. R. Civ. P. 26(f) joint status report by May 8, 2020. A scheduling conference is set for May 14, 2020 at 8:30 a.m.

*Edward Heldman III et al v. Larry Zerner*; Case No. 2:19-cv-08185-GW-(PJWx)
Ruling on Motion to Dismiss

I.   **Background**

Plaintiffs Edward Heldman III; ComedyMX, Inc.; and ComedyMX, LLC sue Defendant Larry Zerner for: (1) breach of contract and the covenant of good faith and fair dealing, (2) breach of fiduciary duty, (3) negligence − malpractice, and (4) fraud.  *See* First Amended Complaint ("FAC"), Docket No. 9.

Plaintiffs allege the following: Plaintiffs are in the business of video publishing and distribution.  *Id.* ¶ 9.  They own hundreds of registered copyrights and distribute their work mainly on platforms such as YouTube and Amazon.  *Id.*  On October 9, 2015, Plaintiffs commenced a federal legal action entitled *ComedyMX, Inc. v. St. Clair*, Case No. CV-16-03249-AGR, in the United States District Court for the Central District of California (the "underlying action").  *Id.* ¶ 10.  The underlying action concerned an intellectual property dispute and, *inter alia*, allegations of copyright infringement by Bruce St. Clair, Joshua Dane St. Clair, and the Cartoon Channel (the "St. Clair parties").  *Id.*  Specifically, the underling action alleged that the St. Clair parties stole three of Plaintiffs' copyrighted videos, put them into a massive compilation, and competed directly with Plaintiffs, stealing their revenue and making money on their property.  *Id.* ¶ 11.  The St. Clair parties brought counterclaims.  *Id.*

On August 25, 2016, Plaintiff ComedyMX, Inc. retained Defendant to represent them in the underlying action.  *Id.* ¶ 12.  In December 2016, the parties in the underlying action attended a mediation, which reached substantial agreement but did not achieve a settlement.  *Id.* ¶ 13.  An essential demand for Plaintiffs was prompt dismissal of the underlying action; a demand of the St. Clair parties involved securing approvals of third parties.  *Id.*  These demands appeared incompatible.  *Id.*

In January 2017, Defendant inquired of Google whether, as part of a settlement process, the St. Clair parties could remove a disputed video, modify it to remove copyright offending material, then post the new one while keeping their view count and video statistics.  *Id.* ¶ 14.  On January 25, 2017, Google confirmed that the St. Clair parties could do so.  *Id.* ¶ 15.  Google had been told that counsel in the underlying action were in agreement, so Google did not indicate whether its response would have been different if this was a point of contention between the

litigating parties. *Id.* On January 25, 2017, Defendant informed Stephen Doniger, counsel for the St. Clair parties in the underlying action, of his exchange with Google. *Id.* ¶ 16. This communication included "keeping the stats and view count," sharing the email chain, and asking whether Doniger's clients were still willing to settle on the terms discussed during the mediation. *Id.*

On January 27, 2017, Google called Doniger to walk him through the process. *Id.* ¶ 17. Defendant arranged a tele-conference for February 2, 2017. *Id.* Defendant invited Google, Donigher, and a representative of the St. Clair parties, but he did not include or notify Plaintiffs. *Id.* In the tele-conference, the individuals present reached an oral ancillary agreement that the action would not be dismissed unless and until the St. Clair parties obtained certain required performance from Google, which was not a party to the underlying action and from which there was no binding commitment. *Id.* ¶ 18. Plaintiffs would not have agreed to the oral ancillary agreement or any settlement agreement containing its terms, which Defendant knew. *Id.* ¶ 19.

On February 23, 2017, Plaintiffs executed the settlement agreement drafted by Doniger and Defendant (the "Settlement Agreement"). *Id.* ¶ 20. The Settlement Agreement did not include any of the assurances from the oral ancillary agreement. *Id.* Plaintiffs were still ignorant of the oral ancillary agreement and the occurrence of the tele-conference. *Id.* Defendant knew that had Plaintiffs known of the oral ancillary agreement or the tele-conference, they would not have signed the Settlement Agreement. *Id.*

On March 1, 2017, the St. Clair parties executed the Settlement Agreement. *Id.* ¶ 21. The Settlement Agreement contains an integration clause stating that the Settlement Agreement is the "entire agreement and understanding" and that it "supersedes and replaces all prior negotiations, agreements, and proposed agreements." *Id.* ¶ 22. It further states that no "promise, representation, or warranty" had been made to "induce" the agreement and that no party "executed this Agreement in reliance on any promise, representation, or warranty not contained herein." *Id.* The Settlement Agreement states that California law governs, and it "cannot be modified or changed except by written instrument signed by each of the Parties." *Id.* The Settlement Agreement also provides the following operational terms:

> 1.1. <u>Dismissal</u>. Within five days of the date of this Agreement and St. Clair posting a compilation video that removes Daffy and the Dinosaur, the Parties, through their attorneys or [sic] record, shall file a stipulation for dismissal with prejudice.

> . . . .
>
> 1.3. <u>Daffy Cartoon</u>.  St. Clair agrees to remove the offending version of Daffy and the Dinosaur from the Compilation. If St. Clair posts a different version of Daffy and the Dinosaur ["a Different Version"] on YouTube or any other internet site, St. Clair will have to retain evidence that the Different Version is not, in fact, the offending version. St. Clair will share this evidence with ComedyMX at ComedyMX's request.

*Id.*  The Settlement Agreement stated that it was effective as of January 26, 2017.  *Id.*  Plaintiffs did not know the significance of this date.  *Id.*

The Settlement Agreement discussed the posting of a Different Version as a possibility, but it did not discuss keeping view counts or other statistics with such a posting.  *Id.* ¶ 23.  It did not provide any explanation for its effective date of January 26, 2017.  *Id.*  Discussions of an intended posting of a Different Version while keeping view counts or other statistics were confined to Defendant, Doniger, Google, and the St. Clair Defendants.  *Id.* ¶ 24.

On April 24, 2017, the St. Clair parties informed Google that their views and positions in searching results from the original video could be transferred to the amended version.  *Id.* ¶ 25.  The *Daffy and the Dinosaur* video was removed, and a Different Version was posted.  *Id.*  The St. Clair parties notified Plaintiffs of the new posting on April 14, 2017.  *Id.* ¶ 26.  Pursuant to the Settlement Agreement, dismissal of the action was therefore required by April 19, 2017.  *Id.*  On May 3, 2017, Defendant wrote to Google, citing its performance as the "last piece to get the case settled and dismissed."  *Id.* ¶ 27.  Defendant did not inform Plaintiffs of this email.  *Id.*  On May 17, 2017, Doniger wrote to Google, citing its performance as being necessary.  *Id.* ¶ 28.  Doniger allegedly asked Google to "get the prior stats reinstated to the amended video" and stated that it was the "only thing holding up completion of the settlement."  *Id.*  Doniger did not inform Plaintiffs of this email.  *Id.*

On May 25, 2017, Defendant and Doniger filed a "Notice of Conditional Settlement."  *Id.* ¶ 29.  This notice stated:

> Pursuant to the terms of the conditional settlement, Defendants will post a modified [sic] to YouTube [Google] which removes one of the videos which allegedly infringed Plaintiff's copyright. The parties are currently awaiting a response from YouTube allowing Defendants to post the modified video. The parties will file a dismissal upon receiving notice from YouTube approving the modified video.

*Id.*  The Notice of Settlement, which Plaintiffs concurrently reviewed, says nothing about keeping the St. Clair parties' view counts or other statistics, nor about getting the St. Clair

parties' prior statistics reinstated in connection with the posting of the amended video. *Id.* ¶ 30.

Beginning April 19, 2017, Plaintiffs repeatedly instructed Defendant to press, by all available legal means, for immediate dismissal of the underlying action. *Id.* ¶ 31. Defendant did not do so. *Id.* On July 10, 2017, Defendant suggested to Doniger that counsel dismiss first the underlying action and follow up with Google later. *Id.* ¶ 32. This did not happen. *Id.* Defendant still refused to act to compel the dismissal, despite instructions from Plaintiffs to do so. *Id.*

On July 21, 2017, Plaintiffs retained new counsel to enforce the dismissal clause of the Settlement Agreement. *Id.* ¶ 33. New counsel then demanded that Doniger execute the dismissal, given the posting of the April 14, 2019 Compilation. *Id.* When Doniger cited the oral ancillary agreement, new counsel contended that Defendant had no authority to bind Plaintiffs as to any settlement provisions other than those expressly stated in the Settlement Agreement. *Id.* ¶ 34. On July 24, 2017, Doniger responded that he "need[ed] [his] clients' stats from before his video was taken down to be reinstated as they were told they would be," and that "that is the only reason [St. Clair] agreed to enter into the settlement." *Id.* ¶ 35. On July 25, 2017, Google confirmed the posting of the St. Clair parties' "video replacement, which preserves the views and other metadata of the original video." *Id.* ¶ 36. Google commenced implementation on August 7, 2017. *Id.*

On August 9, 2017, the underlying action still had not been dismissed. *Id.* ¶ 37. Plaintiffs rescinded the Settlement Agreement based on breach thereof by the failure to dismiss the underlying action. *Id.* Plaintiffs repudiated the new video with its "preserve[d] view [counts] and other metadata of the original video" by posting a new Digital Millennium Copyright Act ("DMCA") takedown of the April 14, 2017 compilation. *Id.* On August 10, 2017, Google informed the St. Clair parties that it was ready to complete the video swap. *Id.* ¶ 38. On August 11, 2017, Google confirmed compliance with the new DMCA takedown notice. *Id.* ¶ 39.

Thereafter, the St. Clair parties and Doniger demanded removal of the new DMCA takedown notice. *Id.* ¶ 40. When Plaintiffs did not remove the DMCA takedown notice, the St. Clair parties and Doniger moved for enforcement of the Settlement Agreement. *Id.* Plaintiffs contend that the St. Clair parties and Doniger were actually seeking enforcement of the oral ancillary agreement. *Id.* On September 21, 2018, the Court ruled that the failure to timely

dismiss the action was not adequate grounds to rescind the Settlement Agreement or relieve Plaintiffs of their obligations thereunder.  *Id.* ¶ 41.  The Court ruled that Defendant had legal authority to bind his clients to the additional terms that the St. Clair parties performance was conditioned on their success in posting a new video and obtaining from Google the view counts and other metadata of the original video.  *Id.*  On September 21, 2018, the Court ordered Plaintiffs to remove the DMCA takedown notice from the April 14, 2017 compilation.  *Id.* ¶ 42.  The Court also ordered Plaintiffs to file a Notice of Compliance within 14 days of the order, at which time the underlying action would be dismissed with prejudice.  *Id.*

Over the next year, Plaintiffs retained and paid multiple counsel to resist the Court's order and undo the legal situation created by Defendant.  *Id.* ¶ 43.  The action was finally dismissed on September 3, 2019, pursuant to a newly drafted settlement agreement (the "Final Settlement Agreement") containing terms acceptable to Plaintiffs.  *Id.*  Plaintiffs incurred additional legal fees exceeding $275,000, in addition to the approximately $29,000 that Plaintiffs paid to Defendant.  *Id.*  During the period between April 19, 2017 (when Plaintiffs contend the underlying action should have been dismissed) and the dismissal of the underlying action on September 3, 2019, Plaintiffs incurred substantial business losses caused by Defendant's misconduct.  *Id.* ¶ 44.  These losses exceed an estimated $400,000.  *Id.*

Defendant moves to dismiss Plaintiff's FAC under Federal Rule of Civil Procedure 12(b)(6).  *See* Motion to Dismiss ("Motion"), Docket No. 15.[1]  Plaintiffs oppose, *see* Opposition to Motion to Dismiss ("Opp'n"), Docket No. 21, and Defendant replies, *see* Reply in Support of Motion to Dismiss ("Reply"), Docket No. 23.

---

[1] Defendant requests that the Court take judicial notice of eleven documents: (1) the complaint filed by ComedyMX, Inc. in *ComedyMX, Inc. v. Bruce St. Clair, et al.*, case no. 2:16-cv-03249-AGR, on October 9, 2015 in the United States District Court for the Central District of California; (2) the docket report in C*omedyMC, Inc. v. St. Clair, et al.*, reflecting the Court's text only minute entry of May 10, 2016; (3) the Request to Substitute Attorney filed by Larry Zerner on August 31, 2016 in C*omedyMC, Inc. v. St. Clair, et al.*; (4) the Court's September 15, 2016 Order granting Larry Zerner's Request to Substitute in C*omedyMC, Inc. v. St. Clair, et al.*; (5) the Counterclaim filed by Joshua Dane St. Clair on March 31, 2016 in C*omedyMC, Inc. v. St. Clair, et al.*; (6) the Request to Substitute Attorney filed by Ryan G. Baker on July 19, 2017 in C*omedyMC, Inc. v. St. Clair, et al.*; (7) the Court's July 20, 2017 Order granting Ryan G. Baker's Request to Substitute in C*omedyMC, Inc. v. St. Clair, et al.*; (8) the Motion to Enforce Settlement Agreement filed by Joshua Dane St. Clair on November 21, 2017 in C*omedyMC, Inc. v. St. Clair, et al.*; (9) the Opposition to Motion to Enforce Settlement Agreement filed by ComedyMX, Inc. on December 19, 2017 in C*omedyMC, Inc. v. St. Clair, et al.*; (10) the Declaration of Edward Heldman III filed on December 19, 2017 in C*omedyMC, Inc. v. St. Clair, et al.*; and (11) the Court's September 21, 2018 Order granting the Motion to Enforce Settlement Agreement in C*omedyMC, Inc. v. St. Clair, et al.*.  The Court considers the documents appropriate for judicial notice.  See *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) ("We may take judicial notice of undisputed matters of public record, including documents on file in federal or state courts." (citation omitted)).  Plaintiffs do not dispute the authenticity of the documents.  Therefore, the Court takes judicial notice of them.

## II. Legal Standard

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint may be dismissed for failure to state a claim for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) ("Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."). The court must construe the complaint in the light most favorable to the plaintiff; accept all allegations of material fact as true; and draw all reasonable inferences from well-pleaded factual allegations. *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001); *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The court is not required to accept as true legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where a plaintiff facing a 12(b)(6) motion has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the motion should be denied. *Id.*; *Sylvia Landfield Trust v. City of Los Angeles*, 729 F.3d 1189, 1191 (9th Cir. 2013). But if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged − but it has not show[n] . . . the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (citations omitted).

## III. Discussion

### A. Statute of Limitations

Defendant argues that Plaintiffs' first three claims (*i.e.* breach of contract, breach of fiduciary duty, and negligence – malpractice) are barred by the statute of limitations for legal malpractice claims. Section 340.6 of the California Code of Civil Procedure provides:

> An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first.

Cal. Civ. Proc. Code § 340.6. In *Stoll v. Superior Court*, 9 Cal. App. 4th 1362, 1366-69, the court traced the legislative history of Section 340.6 and concluded that the one-year limitations

period under that section was applicable to a claim of breach of fiduciary duty brought against an attorney by his or her client. *See also Southland Mechanical Constructors Corp. v. Nixen*, 119 Cal. App. 3d 417, 431 (1981) (breach of contract actions against attorneys also fall within Section 340.6).

Section 340.6 allows the limitations period to be tolled under certain circumstances, including when the "plaintiff has not sustained actual injury" and when the "attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred." *Id.* Tolling is expressly disallowed for any reasons not enumerated in § 340.6. *Laird v. Blacker*, 2 Cal. 4th 606, 618 (1992). Section 340.6 applies to any claims premised on attorney malpractice other than actual fraud. *Lee v. Hanley*, 61 Cal. 4th 1225, 1236-1240 (2015). To determine whether Plaintiffs' claims are barred by the one-year statute of limitations, the Court must therefore answer two questions: (1) when Plaintiffs were put on inquiry notice of the facts giving rise to their claims and (2) whether any of the enumerated bases for equitable tolling apply to Plaintiffs' claims.

"It is well settled that the one-year limitations period of section 340.6 is triggered by the client's discovery of the facts constituting the wrongful act or omission." *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 133 Cal. App. 4th 658, 685 (2005) (internal quotations and citation omitted). As explained by the California Supreme Court in *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103 (Cal. 1988):

> [T]he limitations period begins once the plaintiff has notice or information of circumstances to put a reasonable person *on inquiry*[.] A plaintiff need not be aware of the specific "facts" necessary to establish the claim; that is a process contemplated by pretrial discovery. Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her.

*Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110-11 (1988) (emphasis in original) (internal quotations and citations omitted).

Here, Defendant offers several dates as times by which Plaintiffs were put on inquiry notice. First, Defendant states that the statute of limitations was triggered on March 1, 2017, when the St. Clair defendants signed the underlying Settlement Agreement. However, Defendant provides no information showing why Plaintiffs would have had inquiry notice of wrongdoing at that point: when the St. Clair defendants signed the Settlement Agreement,

7

Plaintiffs did not know that the tele-conference excluding Plaintiffs had occurred, and nothing in the Settlement Agreement gave Plaintiffs notice of the oral ancillary agreement. Therefore, the Court would not find that the statute of limitations was triggered on March 1, 2017.[2]

Defendant proposes three additional dates for the triggering of inquiry notice under the statute of limitations: July 19, 2017, when Plaintiffs' new counsel filed a request to substitute himself in place of Defendant; November 21, 2017, when the St. Clair defendants filed the motion to enforce the Settlement Agreement; and December 19, 2017, when Plaintiffs filed their opposition to the St. Clair parties' motion to enforce the Settlement Agreement. Because even the last of these dates is more than one year before Plaintiffs filed the instant action on September 21, 2019, the Court will focus on what Plaintiffs knew by the last date. The Court is inclined to agree with Defendant that Plaintiffs had inquiry notice of Defendant's alleged wrongdoing by at least December 19, 2017. By the time Plaintiffs filed their opposition to the motion to enforce the Settlement Agreement on December 19, 2017, they had already replaced Defendant as counsel, due to their frustration with his refusal to act to compel the dismissal of the underlying action despite numerous requests to do so. Also by that date, Plaintiffs had been subjected to the St. Clair parties' motion to enforce the Settlement Agreement − this motion claimed that reinstatement of the original video views and statistics was an essential term of the Settlement Agreement that had to be satisfied before dismissal of the underlying action. *See* Motion to Enforce in Underlying Action, Docket No. 16, RJN Ex. 8, pg. 4. The motion to enforce also explicitly outlined the tele-conference that excluded Plaintiffs and Defendant's efforts to coordinate with Google to ensure that the St. Clair parties would not loose the page views and statistics from the original compilation video. *Id.* Finally, when Plaintiffs filed their opposition to the motion to enforce on December 19, 2017, they included a signed declaration by Heldman stating that Defendant "attempted to help the [St. Clair defendants] transfer the viewership statistics of the 2015 Compilation to the April 2017 Compilation." Heldman Declaration in Underlying Action, Docket No. 16, RJN Ex. 10, ¶ 11. The Court agrees with Defendant that these facts establish that Plaintiffs were on inquiry notice of Defendant's alleged

---

[2] Regardless, Defendant continued to represent Plaintiffs at that date, so even if the statute of limitations was triggered by the St. Clair defendants' signing of the Settlement Agreement on March 1, 2017, it was tolled pursuant to Cal. Civ. Proc. Code § 340.6(a)(3). Defendant's representation of Plaintiffs did not cease until after July 19, 2017, when Plaintiffs' new counsel filed a request to substitute counsel. *See* Motion at 19.

wrongdoing by December 19, 2017 at the latest.[3]

Having established that Plaintiffs were on inquiry notice of Defendant's alleged wrongdoing by at least December 19, 2017, the Court now turns to the question of whether any of the enumerated bases for equitable tolling apply to Plaintiffs' claim. Plaintiffs argue that they did not suffer actual injury until September 21, 2018, so their claim was tolled until then. "Actual injury occurs when the client suffers any loss or injury legally cognizable as damages in a legal malpractice action based on the asserted errors or omissions." *Jordache Enters., Inc. v. Brobeck, Phleger & Harrison*, 18 Cal. 4th 739, 743 (1998). Ordinarily, this has already occurred by the time the client discovers the wrongdoing. *Id.* California courts have laid out several guidelines for determining when an injury occurs in the legal malpractice context: "(1) determining actual injury is predominantly a factual inquiry; (2) actual injury may occur without any prior adjudication, judgment, or settlement; (3) nominal damages, speculative harm, and the mere threat of future harm are not actual injury; and (4) the relevant consideration is the fact of damage, not the amount." *Id.* (citing Adams v. Paul 11 Cal. 4th 583, 585-92 (1995)). Further, "when malpractice results in the loss of a right, remedy, or interest, or in the imposition of a liability, there has been actual injury regardless of whether future events may affect the permanency of the injury or the amount of monetary damages eventually incurred." *Foxborough v. Van Atta*, 26 Cal. App. 4th 217, 227 (1994).

Here, Defendant argues that Plaintiffs suffered an actual injury by December 19, 2017, when they were forced to pay another attorney to file an opposition to the St. Clair parties' motion to enforce the Settlement Agreement. Plaintiffs counter that "[a]ctual injury does not occur merely because of attorney fees incurred with substitute counsel." Opp'n at 7. The Court agrees with Defendant that the cases on which Plaintiffs rely for this proposition are inapposite. *ITT Small Bus. Fin. Corp. v. Niles*, 9 Cal. 4th 245 (1994), held that injury from "transactional malpractice" (as opposed to litigation malpractice) did not accrue until "entry of adverse judgment, settlement, or dismissal of the underlying action." *Id.* at 250. However, the California Supreme Court in *Jordache* expressly overruled *ITT* based on its reliance on a bright-line rule for determining actual injury in the transactional context that differed from the litigation context:

> The facts of each case must be examined in light of the specific attorney errors the plaintiff in each case alleges. Consequently, the rule that applies when a plaintiff sustains actual injury from malpractice in transactional matters cannot differ from

---
[3] Plaintiffs do not appear to dispute this fact. *See generally* Opp'n.

> the rule that applies when claims involve other areas of legal advice and services. The resolution of litigation related to alleged malpractice may or may not mark the point at which a plaintiff first sustains actual injury under section 340.6. The statutory scheme cannot accommodate a peremptory rule that declares otherwise. Accordingly, because *ITT* employed criteria for determining actual injury under section 340.6 that conflict with the principles reaffirmed in this opinion, we overrule it.

*Jordache*, 18 Cal. 4th at 763. And *Karno v. Biddle*, 36 Cal. App. 4th 622, 627-28 (1995), which Plaintiffs also cite, was decided in express reliance on the later-overruled reasoning of *ITT*. Finally, *Lazy Acres Mkt., Inc. v. Tseng*, 152 Cal. App. 4th 1431, 1436 (2007), addressed an entirely separate question of whether an insurer was required to reimburse an insured party for attorneys' fees when the insured party believed the insurer's attorney had a conflict and so retained their own attorney. *See id. Lazy Acres* did not address the question of when an injury arises for purposes of determining the triggering of the statute of limitations. *See id.* at 1437 ("*Budd* [*v. Nixen*, 6 Cal. 3d 195, 200 (1971),] stands only for the proposition that the statute of limitations may begin to run when the defendant's negligence causes plaintiff to incur attorney fees. It does not stand for the proposition that defendant will be entitled to damages in every instance where he retains a different attorney to extricate him from some perceived negligence of the defendant.").

Instead, California case law appears to support the proposition that an injury may arise when a party is forced to spend additional resources litigating to solve a problem that was caused by the original attorney's alleged malpractice. For instance, in *Jordache*, the clients suffered an injury before receiving an adverse litigation outcome when "the attorneys' alleged neglect allowed the insurers to raise an objectively viable defense to coverage under the policies," causing the client to have to pay increased costs to litigate against this defense. *Id.* at 743-44; *see also Village Nurseries v. Greenbaum*, 101 Cal. App. 4th 26, 41-42 (2002) ("[A] plaintiff need not suffer a *complete* loss of a right or reach final adjudication of an issue to sustain actual injury pursuant to Code of Civil Procedure section 340.6.") (emphasis original). Similarly, in *Truong v. Glasser*, 181 Cal. App. 4th 102, 114 (2009), the plaintiffs alleged that their attorney had negligently advised them to sign a commercial lease and addendum, and that they suffered damages as a result. The defendant attorney argued that their claim was barred by the statute of limitations, because the plaintiffs' claim was brought more than one year after they hired new counsel to fight the lease, but less than one year after judgment was entered against them in that

suit. *Id.* The court in *Truong* concluded that "Plaintiffs first sustained actual injury when they obtained and were obligated to pay new counsel to file a lawsuit seeking to escape the consequences of their signing the lease, Lease Addendum and guarantee, and therefore sustained actual injury more than one year before the malpractice action was filed." *Id.* at 115.

Based on these cases, the Court would conclude that Plaintiffs suffered an actual injury when they were forced to expend additional resources to litigate against the damage caused by Defendant's alleged malpractice. This occurred no later than December 19, 2017, when Plaintiffs' new counsel filed an opposition to the St. Clair parties' motion to enforce the Settlement Agreement. In their opposition to the motion to enforce, Plaintiffs had to confront the St. Clair parties' argument that reinstatement of the page views and video statistics of the original compilation had to occur before the dismissal of the underlying action. This litigation position of the St. Clair defendants was the direct result of Defendant's alleged wrongdoing. Defendant's alleged malpractice in agreeing to and helping the St. Clair parties to obtain a settlement condition not included in the Settlement Agreement created the situation where the motion to enforce in the underlying action had to be filed in the first place, and it materially weakened Plaintiffs' litigation position in relation thereto. Just as in *Jordache*, *Village Nurseries*, and *Truong*, Plaintiffs incurred additional expenses in having to hire new counsel and defend against the motion to enforce the Settlement Agreement. The Court therefore finds that Plaintiffs sustained an injury from Defendant's alleged malpractice by at least December 19, 2017, over a year before Plaintiffs commenced this action against Defendant. Plaintiffs' claims for breach of contract and the covenant of good faith and fair dealing, breach of fiduciary duty, and negligence are barred by the one-year statute of limitations for legal malpractice claims.

### B. Fraud

Plaintiffs also bring a claim for fraud, which is expressly exempted from Section 340.6. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Allegations of fraud under Rule 9(b) allegations must "be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotations and citation omitted). The "circumstances" required by Rule 9(b) include "the who, what, when, where, and how of the misconduct charged." *Ebeid ex rel. U.S. v. Lungwitz,* 616 F.3d 993, 998 (9th Cir. 2010)

11

(citations and quotations omitted); *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) ("The complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity").

"The suppression of a fact, by one who is bound to disclose it," can constitute fraud. *Knutson v. Foster*, 25 Cal. App. 5th 1075, 1091 (2018) (quoting Cal. Civ. Code, § 1710, subd. (3)). When a plaintiff and defendant are in a fiduciary relationship, the defendant's failure to disclose a material fact to the plaintiff is enough to establish a claim of fraudulent concealment. *See* 1 CACI 1901 (2019); *Amen v. Merced Cty. Title Co.*, 58 Cal. 2d 528, 534 (1962) ("Cases in which the defendant stands in a fiduciary relationship to the plaintiff are frequently treated as if they involved fraudulent concealment of the cause of action by the defendant. The theory is that although the defendant makes no active misrepresentation, this element is supplied by an affirmative obligation to make full disclosure, and the non-disclosure itself is fraud."). Here, both elements are satisfied. First, as Plaintiffs' lawyer, Defendant was in a fiduciary relationship with Plaintiffs. He therefore was under a duty to disclose all relevant information to Plaintiffs. *See, e.g.*, *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal. 3d 176, 188-89 (1971) ("[T]he dealings between practitioner and client frame a fiduciary relationship. The duty of a fiduciary embraces the obligation to render a full and fair disclosure to the beneficiary of all facts which materially affect his rights and interests."). Second, Plaintiffs have alleged that Defendant failed to disclose material information. Plaintiffs allege that Defendant concealed or suppressed the material facts that he held the tele-conference without Plaintiffs, entered the oral ancillary agreement, and aided the St. Clair defendants in attempting to have their view counts and video statistics restored. *See* FAC ¶¶ 17-20, 26-32. These facts were evidently material, as they were crucial in bringing the parties together to a settlement in the underlying action, *see id.* ¶¶ 16-21, 35, and resulted in a litigation dispute regarding enforcement of the Settlement Agreement later on, *see id.* ¶¶ 31-42. Further, Plaintiffs have alleged both that they would not have entered into the Settlement Agreement had they known of Defendant's alleged misconduct and that Defendant knew this was the case. *See id.* ¶¶ 19-20. The Court would therefore find that Plaintiffs have pled fraud with particularity, and the Court would not grant dismissal of this claim.

### C. Punitive Damages

Finally, Defendant argues that the FAC does not state facts sufficient to support a claim

for punitive damages. *See* Motion at 27-31. In California, punitive damages are available in non-contract cases of "oppression, fraud, or malice." Cal. Civ. Code § 3294. Even in the absence of oppression or malice, fraud can serve as "an alternate predicate for the imposition of punitive damages." *American Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton*, 96 Cal. App. 4th 1017, 1052 (2002). Here, the Court has already found that Plaintiffs have sufficiently pled fraud via breach of fiduciary duty. Therefore, the Court would not rule at this stage that punitive damages are foreclosed.

## IV. Conclusion

The Court finds that it can decide the present motion without the need for oral argument of counsel.[4] Therefore, pursuant to C.D. Cal. L.R. 7-15, the hearing on said motion has been taken off-calendar.

Based on the foregoing discussion, the Court would **GRANT** Defendant's Motion to Dismiss Plaintiff's claims for breach of contract and the covenant of good faith and fair dealing, breach of fiduciary duty, and negligence − malpractice. The Court would **DENY** the Motion as to Plaintiffs' claim for fraud and the concomitant possibility of punitive damages. Plaintiffs are to prepare a proposed order.

The Court orders the parties to file a Fed. R. Civ. P. 26(f) joint status report by May 8, 2020.

---

[4] On March 30, 2020, this Court issued an Order to Show Cause in regards to subject matter jurisdiction insofar as Plaintiffs had not sufficiently established the citizenship of plaintiff Comedymx, Inc. and Comedymx, LLC. *See* Docket No. 24. In response, Plaintiffs filed a Response (*see* Docket No. 25) which the Court finds to adequately establish the citizenship of those parties.